UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STATE FARM MUTUAL AUTOMOBILE   :   **CIVIL NO. 1:05-CV-0359**
INSURANCE CO.,   :
   :
       Plaintiff   :   (Magistrate Judge Smyser)
   :
    v.   :
   :
JULIE LIGHTNER,   :
   :
       Defendant   :


**MEMORANDUM AND ORDER**


The complaint for a declaratory judgment was filed on February 28, 2005 by the plaintiff State Farm Mutual Automobile Insurance Co.  Doc. 1.  The answer was filed by defendant Julie Lightner, an insured, on March 11, 2005.  Doc. 3.  The parties consented to a magistrate judge as the judge of the case pursuant to 28 U.S.C. § 636(c).


The jurisdiction of the court is based upon the diversity of citizenship of the plaintiff and the defendant. 28 U.S.C. § 1332.  The plaintiff is an Illinois corporation. The defendant is a resident of Dauphin County, Pennsylvania.

The defendant on September 22, 2005 filed a motion for summary judgment, Doc. 10, and a brief, Doc. 11.  The plaintiff on September 30, 2005 filed a motion for summary judgment, Doc. 12, and a brief, Doc. 13.  The defendant's brief in opposition to the plaintiff's motion was filed on October 11, 2005.  Doc. 15.   The plaintiff's brief in opposition to the defendant's motion for summary judgment was filed on October 11, 2005.  Doc. 16.  Reply briefs were not filed, and these motions are ripe to be decided.  This memorandum and order addresses the parties' motions for summary judgment.  We find there not to be a material factual issue in dispute and conclude that the plaintiff is entitled to judgment as a matter of law.

It is undisputed that Julie Lightner sustained injuries in a motor vehicle accident in September of 2003.  She was insured under a State Farm Mutual Automobile Insurance Company policy of motor vehicle insurance, policy number 668-8213.  Policy number 668-8213 was issued upon the application of Robert Lightner, Julie Lightner's father, in 1988.  In the application, Julie was listed as a driver of the vehicle insured under the policy.  In the 1988 application, Robert Lightner requested liability limits under the policy of

$100,000 per person, $300,000 per accident.  Robert Lightner

selected limits upon coverages for uninsured or under-insured

motorist caused injuries of $15,000 for person, $30,000 per

accident.  Robert Lightner signed and dated an uninsured

motorist/under-insured motorist ("UM/UIM") "sign down" form

specifically selecting lower UM/UIM limits than the policy's

liability limits.

On April 13, 1989, policy number 668-8213 was amended.

A "change menu" was signed by Robert Lightner.  The effect of

the change was that he was no longer the named insured and that

Julie Lightner was thereupon and thereafter the named insured

under the policy.  Julie Lightner was not requested to sign a

UM/UIM "sign down" form and did not sign such a form.

After the motor vehicle accident in September of 2003

in which Julie Lightner sustained personal injuries, the

plaintiff State Farm paid her $15,000 in UIM benefits.  She

seeks further UIM benefits.

From the inception of policy number 668-8213, the

premiums paid under the policy were for UM/UIM benefits in the

amount of $15,000/$30,000 and not for UM/UIM benefits in the

3

amount of $100,000/$300,000.  Julie Lightner paid a premium to acquire $15,000 in UIM coverage each year, and that is the coverage that was stated in the policies issued to her.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under governing law. *Anderson*, *supra*, 477 U.S. at 248.  In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297

F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

There is no fact that is material to the determination of this case that is in dispute.  The parties argue for competing determinations of the issue based upon two different legal theories.  The plaintiff insurer asserts that the sign down executed by the initial named insured, Robert Lightner, the defendant's father, did not become inoperative or invalid after the insurance policy had been transferred by him to his daughter.  The defendant insured asserts that the successor named insured is correctly held to be entitled to UIM coverage equal to bodily injury liability coverage without regard to a predecessor named insured's election under the same policy to lesser UIM coverage limits, unless the successive named insured signs down.  Neither party argues for fact specific variations in these two competing theories that would indicate the presence of material factual issues in this case.

> 75 Pa. C.S. § 1731(a) provided before 1990:
>
> "(a) General rule. – No motor vehicle
> liability insurance policy shall be delivered
> or issued for delivery in this Commonwealth,
> with respect to any motor vehicle registered
> or principally garaged in this Commonwealth,

unless uninsured motorist and underinsured
motorist coverages are provided therein or
supplemental thereto in amounts equal to the
bodily injury liability coverage except as
provided in section 1734 (relating to request
for lower or higher limits of coverage)."

75 Pa. C.S. § 1731(a) provided after the 1990

amendment:

**§ 1731.  Availability, scope and amount of
coverage**

**(A) Mandatory offering.** – No motor vehicle
liability insurance policy shall be delivered
or issued for delivery in this Commonwealth,
with respect to any motor vehicle registered
or principally garaged in this Commonwealth,
unless uninsured motorist and underinsured
motorist coverages are offered therein or
supplemental thereto in amounts as provided in
section 1734 (relating to request for lower
limits of coverage).  Purchase of uninsured
motorist and underinsured motorist coverages
is optional.

75 Pa. § 1734 provides:

**§ 1734.  Request for lower limits of coverage**

A named insured may request in writing
the issuance of coverages under section 1731
(relating to availability, scope and amount of
coverage) in amounts equal to or less than the
limits of liability for bodily injury.

7

The defendant's position is that she is not a named insured who requested in writing that her coverages under 75 Pa.C.S. § 1731 be in amounts equal to less than her policy's limits of liability for bodily injury.  Since she made no such request, she asserts, it was not proper under the Pennsylvania statute for her UIM limits to be set lower than her liability coverages.  The plaintiff insurer considers the first named insured's request to have bound the subsequent named insured in the absence of action by the latter to raise the UM/UIM coverage amounts.

The defendant's position, if held to be correct, would mean that upon a change from a first named insured to a second named insured, in the absence of a Section 1734 written request from the second named insured, the insurer's legal duty would be to raise the UM/UIM coverages as a matter of course to the level of the liability coverages and to accordingly raise the premiums.

75 Pa. C.S. § 1731 requires that uninsured and under-insured motorist coverages be offered in any Pennsylvania motor vehicle insurance policy.  It provides that such coverages may be rejected.  After 1990, it contains no express presumptive or

mandatory level of uninsured or under-insured motorist
coverages but has been consistently construed to require UM/UIM
coverage in the same amount as the policy's bodily injury
liability coverage.

A construction of 75 Pa. C.S. § 1731(a) and § 1734 as
the defendant advocates would not create an unworkable burden
upon an insurer.  The insurer is, of course, a participant in
the process of the replacement of one named insured by another
named insured, and could treat the substitution of a new named
insured for a former named insured as an occasion to ascertain
the new named insured's election of the same UIM coverage as
the bodily injury liability coverage or of a lesser amount.

In *Nationwide v. Buffetta*, 230 F.3d 634 (3d Cir. 2000),
decided on the basis of the amended § 1731, where a divorced
husband transferred an automobile insurance policy to his
former wife, and where the insurer had replaced the former
husband as policy named insured with the new (former wife)
policy named insured, the Court held that the former husband's
earlier written "sign down" of the UIM policy limits remained
effective despite the policy's transfer and despite the lack of
a written "sign down" from the new named insured.  The Court

9

held that a new election of coverage was not necessary to continue the same policy coverage.  The Court determined that a person insured under the policy when her husband was the named insured who becomes the named insured, receives premium notices, receives coverage notices, pays premiums and makes no request for greater coverage has acquiesced in the coverage limits in place when the policy transfer was made.

The facts of the defendant's assumption of the role of named insured here, her receipt of notices of premiums and coverages over a period of many years, and her acquiescence in the extant UIM coverage limits are materially the same as the facts in *Buffetta*, except arguably for the fact that in this case the policy transfer from one named insured to another occurred before the 1990 change to § 1731(a).

In *Kimball v. Cigna Insurance Co.*, 660 A.2d 1386 (Pa. Super. 1995), the plaintiff had been insured under the policy of her mother, the named insured.  Her mother had reduced the policy's uninsured motorist coverage limits prior to adding the plaintiff to the policy as a "named insured."  The plaintiff was injured by an uninsured motorist.  The insurer sought to hold the plaintiff's recovery under the policy to the lowered

limits elected by her mother before the plaintiff became a
named insured.  The plaintiff disputed the applicability of the
lowered limits to her interests under the policy.  She asserted
that she had the right upon becoming a named insured to be
informed by the insurer of the amount of uninsured motorist
coverage available to her to procure, given the bodily injury
liability coverage limits under the policy.  She asserted that
in the absence of such notification by the insurer and in the
absence of her execution of a written lower coverage request
she was entitled to be presumed to have elected the highest
permissible limits and to recover benefits under the policy
accordingly when injured by an uninsured motorist.  The
Pennsylvania Superior Court, however, disagreed with the
plaintiff insured's position and held that the plaintiff
insured was bound by her mother's election.  The Court observed
that there is no basis to consider a new named insured under an
existing policy to be unable to know of the uninsured motorist
policy coverage limits.  There is no basis to consider it to be
unfair to assign the burden of acting to increase coverage
limits to the new named insured.  The Court also noted that the
contrary resolution would permit the new named insured to reap
the benefits of lower policy premiums and of the higher
coverage limits through an election of inaction.  *See, also,*

*State Farm v. Flubacher*, 2002 U.S. Dist. LEXIS 11270 (E.D. Pa. 2002), *aff'd*, 2003 U.S. App. LEXIS 12716 (3d Cir. June 23, 2003).

The defendant asserts that it would be unfair and erroneous to presume that she had waived her statutory rights under the terms of her father's policy.  However, she could have notified her insurer that she did not want to continue on under the lower UIM coverage limits that her father had elected.  By the payment of a higher premium she could have effected an increase in UIM coverage limits to a level as high as the bodily injury liability coverage limits.  The question is not whether she is to be presumed to have waived her statutory rights.  The material fact is that she had not acted to exercise her statutory right.

The defendant cites deposition testimony of a representative of the plaintiff insurer that it is standard procedure for State Farm to obtain a "sign down" form from a new insured when there is a policy transfer.  We have reviewed the deposition testimony.  Doc. 10, Exhibit A, pp. 11-12.  It does not support an inference that is material to the disposition of the motions for summary judgment.

The defendant cites *Nationwide Insurance Company v. Resseguie*, 980 F.2d 226 (3d Cir. 1992).  The cited decision addresses an issue involving the construction and application of the requirement of 75 Pa. C.S. § 1734 that a request for lower coverage be in writing in the context of a case where the request for a reduction in UIM coverage had been oral.  The Court held the written request requirement of the statute to be clear and to preclude according effect to the oral request in that case.  *Resseguie* does not address the issue presented here arising from a successor named insured's endeavor to be deemed unaffected by her predecessor named insured's written request.

The defendant cites *Hartford v. Green*, 134 Fed. Appx. 555 (3d Cir. 2005).  The non-precedential decision in *Hartford v. Green* contains the statement:

> Green urged that she should be entitled to an
> additional $85,000 in UM coverage, so as to
> equal her liability limits of $100,000 because
> Hartford failed to give her the opportunity to
> choose the limits of her UM insurance coverage
> when she became divorced and requested a new
> policy.  Such a choice is required to be given
> to all new named insureds by § 1734 of the
> Pennsylvania Motor Vehicle Financial
> Responsibility Law.

The Court in that case did not address the issue of entitlement under the Pennsylvania statute to coverage, however, but rather

13

held that the district court had lacked jurisdiction to review an arbitrator's award in favor of the insured.  The decision in that case, because it did not address or decide the issue presented here and because it is non-precedential, is not applicable to this case.

We agree with the plaintiff that this factual situation is materially the same as that in *Buffetta, Kimball and Flubacher* for purposes of the resolution of the issue presented here.  Here, as there, if the named insured has had the policy transferred to her by a prior named insured who had made such a written request, 75 Pa. C.S.A. § 1731 and § 1734 do not require the insurer to provide the same level of UIM coverage to the named insured as the liability bodily injury coverage when the named insured has not made a request for the issuance of UIM coverage in an amount equal to the limit of liability for bodily injury in her policy.

We are not presented here with a case involving circumstances reasonably supporting any inference that the successor named insured did not have an opportunity to restore UIM coverage limits at a level as high as the policy's bodily injury liability limits.

14

The defendant has not made the argument that the pre-1990 transfer of the policy to her distinguishes this case from the above-cited cases holding there to be no entitlement to the higher levels of UIM coverage, but we have considered that argument.  None of the decisions appear to us to turn upon the absence in § 1731(a) after 1990 of the phrase ". . . equal to the bodily injury liability coverage except. . ."  The decisions have rather been grounded in the fact that the policy is the same policy and the transferee named insured has had the benefits of lower premiums and the opportunity to increase coverages.

The issue to be decided is one of Pennsylvania law and specifically is what the Pennsylvania Supreme Court would decide.  We predict that the Pennsylvania Supreme Court would hold that a named insured who has had a motor vehicle insurance policy transferred to her by her father, the previous named insured, is not entitled to have UIM coverage limits at the same amounts as bodily injury liability limits under the policy even though her father had signed down in writing to lower UIM coverage limits before she has requested the insurer to restore UIM coverage limits at the amounts equal to the bodily injury liability limits.

15

The defendant's motion for summary judgment will be denied.  The plaintiff's motion for summary judgment will be granted.

**IT IS DECLARED** that Julie Lightner is entitled to a maximum under-insured motorist coverage limit of $15,000 from State Farm policy number 668-8213 for injuries sustained in the motor vehicle accident of September 18, 2003.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:   November 14, 2005.

16